UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| WILLIAM FRANKLIN CROUCH, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | 5:18-cv-643-JMH |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| EQUIFAX INFORMATION SERVICES, | ) | |
| LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | | |

\*\*\*

On October 30, 2018, the Plaintiff, William Franklin Crouch ("Crouch"), filled out and submitted a loan application to Defendant, The Citizens Bank ("TCB"), for an extension of credit. On November 5, 2018, TCB reviewed Crouch's application along with consumer information obtained from Defendant, Equifax Information Services, LLC ("Equifax"). After reviewing those materials, TCB determined it would deny Crouch's application for an extension of credit. However, TCB did notify Crouch of the denial, the reasons for the denial, or the information upon which TCB based its denial until December 19, 2018 – some forty-three (43) days after the date on which TCB denied the application.

Crouch now moves for partial summary judgment on his second claim, alleging TCB violated the Equal Credit Opportunity Act. [DE 33]. TCB has responded in opposition to Crouch's motion, [DE

1

36], and Crouch has replied in support. [DE 45]. As a result, this matter is ripe for review and consideration.

For the reasons that follow, Crouch's motion for partial summary judgment [DE 33] as to TCB's liability under the Equal Credit Opportunity Act is **GRANTED**.

## I. Procedural and Factual Background

In the Fall of 2018, Mr. Crouch decided that he needed funds to do home repairs to his residence in the City of Owingsville in Bath County, Kentucky. [DE 25 at 3, PageID #108, ¶¶ 6, 9]. In October, Crouch obtained his credit report from Equifax and subsequently disputed the contents of that report with Equifax, alleging the report contained several errors. [*Id.* at 3, PageID #108, ¶¶ 6-8]. On October 30, 2018, Mr. Crouch submitted a loan application to TCB's Owingsville branch. [*Id.* at 4, PageID #109, ¶¶ 10-11; DE 28 at 3, PageID #119, ¶ 10].

On November 5, 2018, Sam Wright, a business development officer for TCB, received and reviewed Crouch's application and imported the information in Crouch's handwritten application into the TCB computer system to determine whether Crouch was eligible for the requested loan. [DE 33 at 4, PageID #334; DE 36 at 2, PageID #385; DE 36-1 at 1-2, PageID #400-401]. Thereafter, Wright "shredded" Crouch's handwritten application. [DE 28 at 3, PageID #119, ¶ 11]. Wright then obtained Mr. Crouch's credit report from Equifax. [DE 36-1 at 2, PageID #401, ¶ 5]. Wright was "the only

2

person involved with [Crouch]'s application for credit[,]" [DE 33-5 at 3, PageID #372, ¶ 2], and was the person who made the decision deny Crouch's application. [DE 33-4 at 5, PageID #366].

Upon reviewing Crouch's credit report and the loan application, Wright "...determined that [Crouch] did not meet the bank's parameters to qualify for an unsecured loan... ." [DE 36-1, PageID #401, ¶ 6]. After making the decision to deny Crouch's application, Wright then left a voicemail for Crouch advising that the bank could not make the loan "...as there were issues with his credit report that needed to be resolved before his application could be fully considered." [DE 25 at 4, PageID #109, ¶11; DE 28 at 3, PageID #119, ¶11; DE 36-1 at 2, PageID #401, ¶ 7].

Wright filled out the bank's standard adverse action paperwork, attaching a copy of the computer-generated loan application and credit report and placed it in the bank's secured courier pouch to be delivered to TCB's Lending Compliance Liaison, Angie McCleese, at TCB's main office in Morehead, Kentucky. [DE 36 at 3, PageID #387, ¶ 6; DE 36-1 at 2, PageID #401, ¶ 9].

Upon denial of credit, it is standard procedure for McCleese, upon receipt of the relevant information from the bank officer, to send out adverse action notices upon within the thirty (30) day timeframe required under the ECOA and other state and federal banking regulations. [DE 33-5 at 3, PageID #372, ¶ 3; DE 36 at 3, PageID #387, ¶ 8]. However, the information Wright sent to

3

McCleese relating to TCB's denial of Crouch's application never made it to Ms. McCleese until some time after Crouch filed the instant action. At that point, McCleese was provided the information and generated an adverse action letter. [DE 33-3 at 4, PageID # 360 lns. 16-25].

It is undisputed that the adverse action notice was not sent within thirty (30) days of TCB's denial of Crouch's application. [DE 28 at 4, PageID #120, ¶ 12; 33-3 at 4, PageID #360 lns. 3-7]. As a result, Crouch filed this action, alleging, among other things, that TCB violated the notice requirements of the Equal Opportunity 15 U.S.C. § 1691, *et seq.*

## II.  Legal Standard

Summary judgment is appropriate only when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted).

4

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that nonparty." The Court construes the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the non-moving party's favor. *See Anderson*, 477 U.S. at 248; *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

A trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Thus, "[a] party opposing summary judgment must support their arguments by 'citing to particular parts of materials *in the record*, including depositions, documents, electronically store information, affidavits, or declarations, stipulations [],

5

admissions, interrogatory answers, or other materials[.]'" *Cruz-Cruz v. Conley-Morgan Law Group, PLLC*, Case No. 5:15-cv-157, *4 (E.D. Ky. May 15, 2017) (emphasis in original). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1988). This framework applies to summary judgment motions targeting a defendant's defenses. *Resolution Trust Corp. v. Metropole Bldg. Ltd. P'ship*, 110 F.3d 65, 1997 WL 160330, at *1-2 (6th Cir. 1997).

### III. Analysis

#### A. The Citizens Bank Failed to Notify Crouch Within 30 Days of Its Denial of His Application.

Crouch asks the Court to grant partial summary judgment for him on the issue of the TCB's alleged liability under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq*. [DE 33]. In particular, Crouch argues TCB violated the ECOA when it admittedly failed to send notice of adverse action within thirty (30) days of its denial of Crouch's credit application. [DE 25 at 7, PageID #112, ¶¶ 25-28; DE 33]. Crouch is correct.

The ECOA prohibits creditors from discriminating against any credit applicant "with respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin, sex, or marital status." 15 U.S.C. § 1691(a)(1).

Creditors who fail to comply with ECOA requirements "shall be liable to the aggrieved applicant for any actual damages sustained by such applicant... [,]" and may also be liable for punitive damages, costs, and attorneys fees. *See* 15 U.S.C. § 1691e; 12 C.F.R. § 1002.16(b)(1).

In 1976, Congress amended the ECOA to include a provision requiring creditors to provide applicants with written notice of the specific reasons why an adverse action was taken in regards to their credit. *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 576-78 (6th Cir. 2016) (internal citations omitted). The purpose of the notice requirement is to provide consumers with a "valuable educational benefit" and to allow for the correction of possible errors "[i]n those cases where the creditor may have acted on misinformation or inadequate information." *Id.* at 577 (citing S. Rep. No. 94-589, at 4 (1976)).

The ECOA's notice provision requires that "[w]ithin thirty days (or such longer reasonable time as specified in the regulations of the Bureau[1] for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(1). The language of 15 U.S.C. § 1691 is implemented through Consumer Financial Protection Bureau ("CFPB")

---

[1] "The Bureau" refers to the Consumer Financial Protection Bureau.

regulation 12 C.F.R. § 1002.1, *et seq.* The Bureau's regulations provide that for purposes of the ECOA, "...A creditor shall notify an applicant of action taken: (i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or **adverse action on the application**." 12 C.F.R. § 1002.9(a)(1)(i) (emphasis added).

In this case, there is no doubt that TCB took "adverse action" on Crouch's application. [DE 33-3 at 4, PageID #360, lns. 16-25; DE 33-4 at 5, PageID #366; DE 36-1, PageID #401, ¶ 6]. The ECOA defines "[a]dverse action" as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). Here, Crouch applied for and was denied credit with TCB. [DE 33-3 at 4, PageID #360, lns. 16-25; DE 33-4 at 5, PageID #366; DE 36-1, PageID #401, ¶ 6].

However, TCB failed to send notice to Crouch within 30 days required by the applicable regulation. TCB's denial triggered 12 C.F.R. 1002.9(a)(1)(i), which required TCB to notify Crouch of the denial within (30) days of November 5, 2018. TCB does not dispute that it failed to do so. [DE 28 at 4, PageID #20, ¶ 12; DE 33-3 at 4, PageID #360, lns. 3-7]. As a result, TCB failed to comply with the ECOA's notice requirements.

**B. TCB has not Demonstrated the Existence of a Genuine Dispute as to Whether it's Error was Inadvertent under 12 C.F.R. § 1002.16.**

However, TCB argues that partial summary judgment is not appropriate, claiming its failure to notify Crouch within 30 days was not a violation of the ECOA because it constituted an "inadvertent error[,]" under 12 C.F.R. § 1002.16. [DE 28 at 4, PageID #120, ¶ 12; DE 36 at 7, PageID #391]. In particular, TCB claims its failure was not deliberate, but instead "obviously it was inadvertent and due to a clerical error[.]" [DE 36 at 4, PageID #388, ¶ 10]. As such, TCB claims that its failure to comply with § 1002.9 does not constitute a violation of the ECOA.

TCB is correct that ECOA's implementing regulations do contain a safe-harbor provision for, among other things, notice compliance failures. *See* 12 C.F.R. § 1002.16. Under 12 C.F.R. § 1002.16(c), notice and record retention compliance failures do not constitute an ECOA violation when caused by inadvertent error. The language of 12 C.F.R. § 1002.16(c) expressly provides:

> **A creditor's failure to comply with** §§ 1002.6(b)(6), **1002.9,** 1002.10, 1002.12 or 1002.13 **is not a violation if it results from an inadvertent error.** On discovering an error under §§ 1002.9 and 1002.10, the creditor shall correct it as soon as possible...

(Emphasis added).

The CFPB's Official Interpretations of the regulation, which are located in Supplement I to Part 1002, provide further definitional guidance. *See* 12 C.F.R. pt. 1002, Supp. I. In particular, the CFPB's interpretation defines "inadvertent error" for purposes of determining whether a creditor has failed to comply with § 1002.16(c), including the adverse action notification requirements implicated here. The CFPB's interpretation provides:

> ...Inadvertent errors include, but are not limited to, clerical mistake, calculation error, computer malfunction, and printing error. An error of legal judgment is not inadvertent.

12 C.F.R. pt. 1002, Supp. I, § 1002.16(c).

To prevail on the ECOA's inadvertent error defense, TCB must demonstrate that the error was "a mechanical, electronic, or clerical error ... [that] was not intentional and occurred notwithstanding the maintenance of procedures reasonably adapted to avoid such errors." 12 C.F.R. § 1002.2(s). Thus, TCB must ultimately establish three elements to avail itself of the inadvertent error defense. *Id.* First, TCB's error must be "mechanical, electronic, or clerical." Second, TCB must demonstrate that the error was not intentional. *Id.* Third, TCB must show the error occurred "...notwithstanding the maintenance of procedures reasonably adapted to avoid such errors." *Id.*

Upon denial of Crouch's application, Wright placed Crouch's file in a courier bag in order to transfer from the Owingsville

10

branch to the central office in Morehead. [DE 36 at 4, PageID #388, ¶ 10]. Upon arrival at the TCB Morehead office, these courier bags are opened and usually delivered to the appropriate party. [*Id.*]. It is standard procedure for McCleese, upon receipt of the relevant information from the bank officer, to send out adverse action notices upon within the thirty (30) day timeframe required under the ECOA and other state and federal banking regulations. [DE 33-5 at 3, PageID #372, ¶ 3; DE 36 at 3, PageID #387, ¶ 8]. However, TCB states that it is unaware "...who opened the bag..." containing Crouch's denial paperwork or "...why Mr. Crouch's file never made it to Ms. McCleese... ." [DE 36 at 4, PageID #388, ¶ 10]. This failure to send the adverse action notice, TCB argues, was "...due to an inadvertent clerical mistake." [DE 36 at 11, PageID #395].

TCB agrees the language of 12 C.F.R. § 1002.16(c) clearly places the ultimate burden on TCB to prove its error was "inadvertent." [DE 36 at 9-10, PageID #393-94]. However, TCB also argues that Crouch cannot show that TCB has not demonstrated all the elements of the defense. Thus, TCB implies that on summary judgment Crouch – not it – must demonstrate "there is an absence of evidence to support the nonmoving party's case[,]" *Celotex Corp.*, 477 U.S. at 325. That is not the law.

Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record

11

which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d at 665. If the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof then 'the plain language of Rule 56(c) mandates the entry of summary judgment.'" *Celotex Corp.*, 477 U.S. at 323 (internal citations and quotations omitted).

Thus, to survive Crouch's motion for summary judgment, TCB's must demonstrate the existence of a genuine issue of material fact on each of the three elements of the ECOA's inadvertent error defense. 12 C.F.R. § 1002.2(s). TCB has failed to do so.

First, TCB has failed to show the existence of a genuine fact issue as to whether the creditor's error was "mechanical, electronic, or clerical." *Id.* TCB argues that Crouch "acknowledges in its motion that TCB has asserted sufficient evidence to satisfy 'the initial part of the definition of 'inadvertent error.'" [Doc. 36 at 10, PageID #394]. It is true that Crouch does not admit but does not strongly dispute that there is evidence to show TCB's error was "clerical." [DE 33 at 10-11, PageID #340-41].

However, Wright conceded he did not know what caused the error, let alone that the cause was clerical, electronic, or otherwise. [DE 32 at 93, PageID 278, ln. 11]. Nor does TCB put forth any evidence to show that the error was, in fact, clerical

12

in nature. Even in a light most favorable to TCB, Wright's and TCB's lack of knowledge as to whether the error was clerical is insufficient to show the existence of a genuine issue of material fact.[2]

Next, TCB failed to demonstrate the existence of a genuine issue of material fact as to whether the error was intentional or unintentional. 12 C.F.R. § 1002.2(s). TCB Vice President, Ryan Neff, states that it was not TCB's intention to fail to send Crouch an adverse action notice. [DE 31 at 21, PageID #151, ln. 17]. While TCB argues that its failure was not intentional, that statement is unsupported by anything other than Mr. Mr. Neff's conclusory statements. Curiously, Crouch does not argue that the failure to send notice was intentional. [DE 33 at 10-11, PageID #340-41].

Regardless, TCB failed to demonstrate the existence of a fact issue on this element of the inadvertent error defense. In fact, as discussed above, the record reflects that neither TCB nor Wright have any knowledge as to what happened to the documents after Wright placed them in the courier bag. Instead, Wright only said he "...fulfilled [his] obligation to start [the notice] process...[,]" [DE 32 at 93, PageID #278, lns. 11-12], that "[i]t's a manual process and there must have been a mistake made[;] an

---

[2] While TCB's failure to make such a showing on any one element of the "inadvertent error" defense claim is fatal, 12 C.F.R. § 1002.2(s), we analyze each the other two elements.

13

error of some sort." [*Id*. at lns. 20-21]. This was the end of his involvement with the process. Although Wright did state that he believed the error to be "unintentional[,]" [DE 32 at 94, PageID #279, ln. 4], that statement is conclusory and unsupported by any evidence before the Court. Moreover, Wright's admission that he had no knowledge how the error occurred, [DE 32 at 93, PageID 278, ln. 11], defeats any claim he may make regarding the intentionality of the error.

Finally, even if the error was both clerical and unintentional, TCB failed to demonstrate the existence of a genuine issue of material fact as to whether the error occurred "...notwithstanding the maintenance of procedures reasonably adapted to avoid such errors." 12 C.F.R. § 1002.2(s). Crouch argues that TCB does not maintain any procedure reasonably adapted to avoid this type of error. [DE 45 at 11, PageID #448]. TCB states that Crouch cannot show its error was "...intentional or occurred notwithstanding the maintenance of the bank's procedures reasonably adapted to avoid such errors[.]" [DE 36 at 10, PageID #394]. As discussed above, TCB "...has an affirmative duty to direct the court's attention to those specific portions of the record which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d at 665. TCB has failed to do so.

However, when asked during his deposition testimony whether TCB had such a procedure, [DE 31], Mr. Neff admitted that TCB does

14

"...not have a procedure that would necessarily prevent this from happening." [Id. at 30, PageID #160, lns. 18-20]. Mr. Neff stated only that TCB has "...procedures that we utilize to process adverse action notices." [DE 31 at 40, PageID #170, lns. 9-10]. He further claims that "...[o]ur procedure, in and of itself, should prevent that from happening." [DE 31 at 40, PageID #170, lns. 9-10]. When asked how that procedure is specifically designed to avoid the mistake that took place here, Neff stated only that TCB "...utilize[s] individuals that have experience and do a good job for [TCB]." [DE 31 at 45, PageID #175, lns. 6-7]. This alone is insufficient to demonstrate the existence of a genuine issue of material fact as to this element of the defense.

## IV. CONCLUSION

The facts, even when read in the light most favorable TCB, establish that TCB failed to comply with ECOA notice requirements when it failed to provide Crouch with notice of its denial of his loan application within thirty (30) days of the denial. Nor has TCB put forth evidence demonstrating the existence of a question as to whether TCB's error was inadvertent under the 12 C.F.R. § 1002.16. As TCB has failed to demonstrate the existence of a genuine issue of material fact as to any of the three elements of the "inadvertent error" defense, much less all three, we find partial summary judgment is appropriate on the issue of TCB's liability under the ECOA.

Accordingly, and for the foregoing reasons, **IT IS ORDERED** as follows: That Crouch's motion for partial summary judgment [DE 33] as to TCB's liability under the ECOA be, and the same hereby is, **GRANTED**.

This the 8th day of August, 2019.

