UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| WILLIAM FRANKLIN CROUCH, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | 5:18-cv-643-JMH |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER**[1] |
| EQUIFAX INFORMATION SERVICES, | ) | |
| LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*

On October 30, 2018, the Plaintiff, William Franklin Crouch ("Crouch"), filled out and submitted a loan application to Defendant, The Citizens Bank ("TCB"), for an extension of credit. On November 5, 2018, TCB reviewed Crouch's application along with consumer information obtained from Defendant, Equifax Information Services, LLC ("Equifax"). After reviewing those materials, TCB determined it would deny Crouch's application for an extension of credit. However, TCB did notify Crouch of the denial, the reasons for the denial, or the information upon which TCB based its denial until December 19, 2018 – some forty-three (43) days after the date on which TCB denied the application.

Crouch now moves for partial summary judgment on his second claim, alleging TCB violated the Equal Credit Opportunity Act.

---

[1] The Court inadvertently entered a draft Memorandum Opinion and Order in this case on August 8, 2019. For that reason, the Court **VACATES** that Memorandum Opinion and Order and directs the Clerk that the inadvertently filed draft be **STRICKEN** from the docket.

1

[DE 33]. TCB has responded in opposition to Crouch's motion, [DE 36], and Crouch has replied in support. [DE 45]. As a result, this matter is ripe for review and consideration.

For the reasons that follow, Crouch's motion for partial summary judgment [DE 33] as to TCB's liability under the Equal Credit Opportunity Act is **GRANTED**.

## I. Procedural and Factual Background

In the Fall of 2018, Mr. Crouch decided that he needed funds to do home repairs to his residence in the City of Owingsville in Bath County, Kentucky. [DE 25 at 3, PageID #108, ¶¶ 6, 9]. In October, Crouch obtained his credit report from Equifax and subsequently disputed the contents of that report with Equifax, alleging the report contained several errors. [*Id*. at 3, PageID #108, ¶¶ 6-8]. On October 30, 2018, Mr. Crouch submitted a loan application to TCB's Owingsville branch. [*Id*. at 4, PageID #109, ¶¶ 10-11; DE 28 at 3, PageID #119, ¶ 10].

On November 5, 2018, Sam Wright, a business development officer for TCB, received and reviewed Crouch's application and imported the information in Crouch's handwritten application into the TCB computer system to determine whether Crouch was eligible for the requested loan. [DE 33 at 4, PageID #334; DE 36 at 2, PageID #385; DE 36-1 at 1-2, PageID #400-401]. Thereafter, Wright "shredded" Crouch's handwritten application. [DE 28 at 3, PageID #119, ¶ 11]. Wright then obtained Mr. Crouch's credit report from

2

Equifax. [DE 36-1 at 2, PageID #401, ¶ 5]. Wright was "the only person involved with [Crouch]'s application for credit[,]" [DE 33-5 at 3, PageID #372, ¶ 2], and was the person who made the decision deny Crouch's application. [DE 33-4 at 5, PageID #366].

Upon reviewing Crouch's credit report and the loan application, Wright "...determined that [Crouch] did not meet the bank's parameters to qualify for an unsecured loan... ." [DE 36-1, PageID #401, ¶ 6]. After making the decision to deny Crouch's application, Wright then left a voicemail for Crouch advising that the bank could not make the loan "...as there were issues with his credit report that needed to be resolved before his application could be fully considered." [DE 25 at 4, PageID #109, ¶11; DE 28 at 3, PageID #119, ¶11; DE 36-1 at 2, PageID #401, ¶ 7].

Wright filled out the bank's standard adverse action paperwork, attaching a copy of the computer-generated loan application and credit report and placed it in the bank's secured courier pouch to be delivered to TCB's Lending Compliance Liaison, Angie McCleese, at TCB's main office in Morehead, Kentucky. [DE 36 at 3, PageID #387, ¶ 6; DE 36-1 at 2, PageID #401, ¶ 9].

Upon denial of credit, it is standard procedure for McCleese, upon receipt of the relevant information from the bank officer, to send out adverse action notices upon within the thirty (30) day timeframe required under the ECOA and other state and federal banking regulations. [DE 33-5 at 3, PageID #372, ¶ 3; DE 36 at 3,

3

PageID #387, ¶ 8]. However, the information Wright sent to McCleese relating to TCB's denial of Crouch's application never made it to Ms. McCleese until some time after Crouch filed the instant action. At that point, McCleese was provided the information and generated an adverse action letter. [DE 33-3 at 4, PageID # 360 lns. 16-25].

It is undisputed that the adverse action notice was not sent within thirty (30) days of TCB's denial of Crouch's application. [DE 28 at 4, PageID #120, ¶ 12; 33-3 at 4, PageID #360 lns. 3-7]. As a result, Crouch filed this action, alleging, among other things, that TCB violated the notice requirements of the Equal Opportunity 15 U.S.C. § 1691, *et seq.*

## II. Legal Standard

Summary judgment is appropriate only when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

4

*Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that nonparty." The Court construes the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the non-moving party's favor. *See Anderson*, 477 U.S. at 248; *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

A trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Thus, "[a] party opposing summary judgment must support their arguments by 'citing to particular parts of materials *in the record*,

5

including depositions, documents, electronically store information, affidavits, or declarations, stipulations [], admissions, interrogatory answers, or other materials[.]'" *Cruz-Cruz v. Conley-Morgan Law Group, PLLC*, Case No. 5:15-cv-157, *4 (E.D. Ky. May 15, 2017) (emphasis in original). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1988). This framework applies to summary judgment motions targeting a defendant's defenses. *Resolution Trust Corp. v. Metropole Bldg. Ltd. P'ship*, 110 F.3d 65, 1997 WL 160330, at *1-2 (6th Cir. 1997).

### III. Analysis

#### A. The Citizens Bank Failed to Notify Crouch Within 30 Days of Its Denial of His Application.

Crouch asks the Court to grant partial summary judgment for him on the issue of the TCB's alleged liability under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* [DE 33]. In particular, Crouch argues TCB violated the ECOA when it admittedly failed to send notice of adverse action within thirty (30) days of its denial of Crouch's credit application. [DE 25 at 7, PageID #112, ¶¶ 25-28; DE 33]. Crouch is correct.

The ECOA prohibits creditors from discriminating against any credit applicant "with respect to any aspect of a credit

transaction ... on the basis of race, color, religion, national origin, sex, or marital status." 15 U.S.C. § 1691(a)(1). Creditors who fail to comply with ECOA requirements "shall be liable to the aggrieved applicant for any actual damages sustained by such applicant... [,]" and may also be liable for punitive damages, costs, and attorneys fees. *See* 15 U.S.C. § 1691e; 12 C.F.R. § 1002.16(b)(1).

In 1976, Congress amended the ECOA to include a provision requiring creditors to provide applicants with written notice of the specific reasons why an adverse action was taken in regards to their credit. *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 576-78 (6th Cir. 2016) (internal citations omitted). The purpose of the notice requirement is to provide consumers with a "valuable educational benefit" and to allow for the correction of possible errors "[i]n those cases where the creditor may have acted on misinformation or inadequate information." *Id.* at 577 (citing S. Rep. No. 94-589, at 4 (1976)).

The ECOA's notice provision requires that "[w]ithin thirty days (or such longer reasonable time as specified in the regulations of the Bureau[2] for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15

---

[2] "The Bureau" refers to the Consumer Financial Protection Bureau.

U.S.C. § 1691(d)(1). The language of 15 U.S.C. § 1691 is implemented through Consumer Financial Protection Bureau ("CFPB") regulation 12 C.F.R. § 1002.1, *et seq.* The Bureau's regulations provide that for purposes of the ECOA, "...A creditor shall notify an applicant of action taken: (i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or **adverse action on the application**." 12 C.F.R. § 1002.9(a)(1)(i) (emphasis added).

In this case, there is no doubt that TCB took "adverse action" on Crouch's application. [DE 33-3 at 4, PageID #360, lns. 16-25; DE 33-4 at 5, PageID #366; DE 36-1, PageID #401, ¶ 6]. The ECOA defines "[a]dverse action" as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). Here, Crouch applied for and was denied credit with TCB. [DE 33-3 at 4, PageID #360, lns. 16-25; DE 33-4 at 5, PageID #366; DE 36-1, PageID #401, ¶ 6].

However, TCB failed to send notice to Crouch within 30 days required by the applicable regulation. TCB's denial triggered 12 C.F.R. 1002.9(a)(1)(i), which required TCB to notify Crouch of the denial within (30) days of November 5, 2018. TCB does not dispute that it failed to do so. [DE 28 at 4, PageID #20, ¶ 12; DE 33-3

at 4, PageID #360, lns. 3-7]. As a result, TCB failed to comply with the ECOA's notice requirements.

### B. TCB has Failed to Demonstrate that it's Error was Inadvertent under 12 C.F.R. § 1002.16.

However, TCB argues that, notwithstanding its failure to notify Crouch within 30 days, its failure does not constitute a violation of the ECOA because it was "inadvertent error[,]" under 12 C.F.R. § 1002.16. [DE 28 at 4, PageID #120, ¶ 12; DE 36 at 7, PageID #391]. In particular, TCB claims its failure was not deliberate, but instead "obviously it was inadvertent and due to a clerical error[.]" [DE 36 at 4, PageID #388, ¶ 10]. As such, TCB claims that its failure to comply with § 1002.9 does not constitute a violation of the ECOA, and that partial summary judgment is inappropriate.

In response, Crouch argues that TCB has not demonstrated that its error was inadvertent under the applicable regulation, 12 C.F.R. § 1002.16. In particular, Crouch argues that TCB has not offered evidence that it maintained "...procedures reasonably adapted to avoid such errors." 12 C.F.R. § 1002.2(s). Crouch is correct.

As TCB points out, the ECOA's implementing regulations do contain a safe-harbor provision for, among other things, notice compliance failures. *See* 12 C.F.R. § 1002.16. Under 12 C.F.R. § 1002.16(c), notice and record retention compliance failures do not

constitute an ECOA violation when caused by inadvertent error. The language of 12 C.F.R. § 1002.16(c) expressly provides:

> **A creditor's failure to comply with** §§ 1002.6(b)(6), **1002.9,** 1002.10, 1002.12 or 1002.13 **is not a violation if it results from an inadvertent error**. On discovering an error under §§ 1002.9 and 1002.10, the creditor shall correct it as soon as possible...

(Emphasis added).

The CFPB's Official Interpretations of the regulation, which are located in Supplement I to Part 1002, provide further definitional guidance. *See* 12 C.F.R. pt. 1002, Supp. I. In particular, the CFPB's interpretation defines "inadvertent error" for purposes of determining whether a creditor has failed to comply with § 1002.16(c), including the adverse action notification requirements implicated here. The CFPB's interpretation provides:

> ...Inadvertent errors include, but are not limited to, clerical mistake, calculation error, computer malfunction, and printing error. An error of legal judgment is not inadvertent.

12 C.F.R. pt. 1002, Supp. I, § 1002.16(c).

To prevail on the ECOA's inadvertent error defense, TCB must demonstrate that the error was "a mechanical, electronic, or clerical error ... [that] was not intentional and occurred notwithstanding the maintenance of procedures reasonably adapted to avoid such errors." 12 C.F.R. § 1002.2(s). Thus, TCB must ultimately establish three elements to avail itself of the

10

inadvertent error defense. *Id.* First, TCB's error must be "mechanical, electronic, or clerical." *Id.* Second, TCB must demonstrate that the error was not intentional. *Id.* Third, TCB must show the error occurred "...notwithstanding the maintenance of procedures reasonably adapted to avoid such errors." *Id.*

In the instant case, upon denial of Crouch's application, Wright placed Crouch's file in a courier bag in order to transfer from the Owingsville branch to the central office in Morehead. [DE 36 at 4, PageID #388, ¶ 10]. Upon arrival at the TCB Morehead office, these courier bags are opened and usually delivered to the appropriate party. [*Id.*]. It is standard procedure for McCleese, upon receipt of the relevant information from the bank officer, to send out adverse action notices upon within the thirty (30) day timeframe required under the ECOA and other state and federal banking regulations. [DE 33-5 at 3, PageID #372, ¶ 3; DE 36 at 3, PageID #387, ¶ 8].

Here, Wright states he "...fulfilled [his] obligation to start [the notice] process...[,]" [DE 32 at 93, PageID #278, lns. 11-12], that "[i]t's a manual process and there must have been a mistake made[;] an error of some sort." [*Id.* at lns. 20-21]. This was the end of Wright's involvement with the notice process. TCB further states that it is unaware "...who opened the bag..." containing Crouch's denial paperwork or "...why Mr. Crouch's file never made it to Ms. McCleese... ." [DE 36 at 4, PageID #388, ¶

11

10]. Neither TCB nor Wright know what happened to the file. [DE 32 at 93, PageID 278, ln. 11]. Despite this, TCB argues that whatever did happen was an "...inadvertent clerical mistake." [DE 36 at 11, PageID #395].

The language of 12 C.F.R. § 1002.16(c) clearly places the ultimate burden on TCB to prove its error was "inadvertent." However, failure to make such a showing on any one element of the "inadvertent error" defense is fatal. 12 C.F.R. § 1002.2(s). "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d at 665; *see also*, *Celotex Corp.*, 477 U.S. at 323 (stating summary judgment is appropriate if non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof..." (internal citations and quotations omitted)). Thus, to survive Crouch's motion for summary judgment, TCB's must put forth evidence to establish all three elements of the ECOA's inadvertent error defense. 12 C.F.R. § 1002.2(s).

TCB has failed to do so. Curiously, Crouch does not argue that TCB failed to demonstrate either that the error at issue was "mechanical, electronic, or clerical[,]" and unintentional. [DE 33 at 10-11, PageID #340-41]. TCB argues as much. [Doc. 36 at 10, PageID #394]. Thus, Crouch appears to concede that TCB has

12

established elements one and two of the inadvertent error defense. However, even assuming TCB has offered evidence demonstrating these two elements are met, our inquiry does not end here.

We must also consider whether TCB has offered evidence showing that the error occurred "...notwithstanding the maintenance of procedures reasonably adapted to avoid such errors." 12 C.F.R. § 1002.2(s). Crouch argues that TCB does not maintain any procedure reasonably adapted to avoid this type of error. [DE 45 at 11, PageID #448]. TCB states that Crouch cannot show its error was "...intentional or occurred notwithstanding the maintenance of the bank's procedures reasonably adapted to avoid such errors[.]" [DE 36 at 10, PageID #394]. Of course, in asserting the inadvertent error defense TCB "...has an affirmative duty to direct the court's attention to those specific portions of the record which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d at 665. TCB has not done so.

Here, TCB concedes it has not shown that it maintains procedures reasonably adapted to prevent this specific error. When asked during his deposition testimony whether TCB had a procedure reasonably adapted to avoid such errors, [DE 31], Mr. Neff admitted that TCB does "...not have a procedure that would necessarily prevent this from happening." [*Id*. at 30, PageID #160, lns. 18-20].

13

Notably, TCB does not even known what the specific error was in this case, much less what procedure TCB maintains to prevent it. In the instant case, any claim that TCB did have such procedures is undercut by the fact that neither TCB nor Wright knew what happened to the file after it went into the courier bag. [DE 32 at 93, PageID #278, ln. 11; DE 36 at 4, PageID #388, ¶ 10]. If TCB did not know what error occurred between the time the file went into the courier bag and when it should have arrived on Angie McCleese's desk, it could not possibly know whether it had a procedure in place "reasonably adapted to avoid...[,]" that specific type error. Moreover, the fact that TCB does not know what kind of error occurred further indicates that it does not have procedures in place to identify, let alone avoid, such errors.

TCB next argues that simply having procedures in place to process adverse action notices is sufficient to establish this element. In particular, TCB representative, Mr. Neff, states TCB has "...procedures that we utilize to process adverse action notices." [DE 31 at 40, PageID #170, lns. 9-10]. TCB claims "...[o]ur procedure, in and of itself, should prevent [this error] from happening." [DE 31 at 40, PageID #170, lns. 9-10]. Interestingly, TCB's representative could point to only one such procedure: "...utilize[ing] individuals that have experience and do a good job for [TCB]." [DE 31 at 45, PageID #175, lns. 6-7].

We disagree with TCB. Creating procedures to send out adverse action notices required by law and regulation is not the same as maintaining "...procedures reasonably adapted to avoid" specific types of unintentional mechanical, electronic, or clerical errors that might occur during the notification process. 12 C.F.R. § 1002.2(s). Moreover, even if TCB had implemented some procedures to send out notices that were also reasonably adapted to avoid the mechanical, electronic, or technical errors, TCB has not identified either the error that occurred nor the procedure to prevent it. Certainly, "utilizing experienced employees" is not such a "procedure."

In sum, we find that TCB has not established that it maintains procedures reasonably adapted to avoid the error that occurred here. Thus, TCB cannot avail itself of the inadvertent error defense under 12 C.F.R. § 1002.16(c), and its clear violation of the ECOA 30-day notice requirement entitles Crouch to partial summary judgment on his ECOA claim.

## CONCLUSION

The facts, even when read in the light most favorable TCB, establish that TCB failed to comply with ECOA notice requirements when it failed to provide Crouch with notice of its denial of his loan application within thirty (30) days of the denial. In addition, TCB has failed to demonstrate that it maintains procedures reasonably adapted to prevent the error that occurred

here. As such, TCB has failed cannot avail itself of the inadvertent error defense to excuse its failure to comply with ECOA notice requirements. Accordingly, and for the foregoing reasons, **IT IS ORDERED** as follows:

(1) That Crouch's motion for partial summary judgment [DE 33] as to TCB's liability under the ECOA be, and the same hereby is, **GRANTED**; and

(2) That the inadvertently filed draft memorandum opinion and order be, and the same hereby is, **VACATED**; and

(3) That the Clerk is directed that the vacated memorandum opinion and order be **STRICKEN** from the docket.

This the 12th day of August, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge